IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION


MATTIE GODDARD                       *

          Plaintiff,                 *

vs.                                  *
                                            CASE NO. 1:06-CV-34(CDL)
                                     *

THE CITY OF ALBANY, GEORGIA;
ALFRED D. LOTT, Individually         *
and in his Official Capacity
as City Manager for the              *
City of Albany, Georgia
                                     *
          Defendants.
                                     *
_____      *

O R D E R

Plaintiff filed the above captioned action against her former
employer, the City of Albany, Georgia, ("the City") and her former
supervisor, Alfred D. Lott.   Plaintiff alleges that Defendants
unlawfully discriminated and retaliated against her in violation of
her federal statutory and constitutional rights when they terminated
her employment.   Defendants have filed seven separate motions for
partial dismissal (Docs. 11, 13, 15, 17, 20, 22, and 24) pursuant to
Federal Rules of Civil Procedure Rule 12(b)(6),[1] contending that
Plaintiff's Complaint fails to state a claim upon which relief may be
granted.[2]

_____

[1]Defendants also filed an Amended Motion to Partially Dismiss (Doc.
26) which relates to the subject matter of Defendants' first motion (Doc.
11).

[2]Defendants first raised their "failure to state a claim" defense in
their responsive pleading.  Therefore, their subsequently filed motions
to dismiss shall be construed as motions for judgment on the pleadings

At the hearing on Defendants' motions, they withdrew their motions as to the following claims which shall thus remain pending:[3]

(1)   42 U.S.C. § 1983 claims for race discrimination by Defendant Lott, individually, and by the City of Albany, each in violation of 42 U.S.C. § 1981 and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution;

(2)   42 U.S.C. § 1983 claims for gender discrimination by Defendant Lott, individually, and by the City of Albany, in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution;

(3)   42 U.S.C. § 1983 claim for retaliation by Defendant Lott, individually, and the City of Albany, in violation of 42 U.S.C. § 1981; and

(4) Punitive damages claim against Defendant Lott, individually.

Thus, the only motion remaining for consideration is Defendants' Fifth Motion (Doc. 20) in which they seek the dismissal of Plaintiff's claims of retaliatory termination in violation of her

---

pursuant to Fed. R. Civ. P. 12(c).  *See Skrtich v. Thornton*, 280 F.3d 1295, 1306 n.13 (11th Cir. 2002).

[3]Due to the withdrawal of Defendants' first, second, fourth, seventh and amended motions (Docs. 11, 13, 17, 24 and 26), each of these motions is hereby denied as moot.

First Amendment rights.[4]  For the following reasons, Defendants' Fifth

Motion (Doc. 15) is granted.

JUDGMENT ON THE PLEADINGS STANDARD

Judgment on the pleadings is appropriate "when there are no

material facts in dispute, and judgment may be rendered by

considering the substance of the pleadings and any judicially noticed

facts."  *Horsley v. Rivera*, 292 F.3d 695, 700 (11th Cir. 2002)

(internal citation omitted).  In this case, Defendants' motions for

judgment on the pleadings are based upon their contention that

Plaintiff's Complaint fails to state a claim upon which relief may be

granted.  "If upon reviewing the pleadings it is clear that the

plaintiff would not be entitled to relief under any set of facts that

could be proved consistent with the allegations, the court should

dismiss the complaint."  *Id.*  As is required under Rule 12(b)(6), the

Court "must accept all facts in the complaint as true and 'view them

in the light most favorable to the' plaintiff[]."  *Moore v. Liberty

Nat. Life Ins. Co.*, 267 F.3d 1209, 1213 (11th Cir. 2001); *see also

Gen. Guar. Ins. Co. v. Parkerson*, 369 F.2d 821, 825 (11th Cir. 1966).

However, "conclusory allegations, unwarranted factual deductions, or

---

[4]Since Plaintiff's claim against Defendant Lott in his official capacity is functionally equivalent to her claim against the City, Defendants' Third Motion (Doc. 15) is granted.  (*See Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991); *Snow v. City of Citronelle*, 420 F.3d 1262, 1270 (11th Cir. 2005); *see also Abusaid v. Hillsborough County Bd. Of County Com'rs*, 405 F.3d 1298, 1302 n.3 (11th Cir. 2005). Additionally, since Plaintiff withdrew her Fourteenth Amendment due process claims at the hearing, Defendants' Sixth Motion (Doc. 22) is granted.

3

legal conclusions masquerading as facts will not prevent dismissal."
*Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir.
2003). Moreover, a defendant is entitled to "a complaint
contain[ing] a 'short and plain statement of the claim' that will
give the defendant fair notice of what the plaintiff's claim is and
the grounds upon which it rests." *Fullman v. Graddick,* 739 F.2d 553,
556 (11th Cir. 1984) (internal citation omitted). "Even under the
so-called notice rules of pleading, the complaint must state a cause
of action sufficient to affirmatively show the plaintiff is entitled
to relief, for '[i]t is not enough, to indicate merely that the
plaintiff has a grievance but sufficient detail must be given so that
the defendant, and the Court, can obtain a fair idea of what the
plaintiff is complaining, and can see that there is some legal basis
for recovery.'" *Id.* (alteration in original) (internal citation
omitted).

PLAINTIFF'S COMPLAINT

Construing Plaintiff's Complaint in her favor, as is required at
this stage of the proceedings, Plaintiff alleges the following in
support of her First Amendment retaliation claim:

Plaintiff, a sixty-six year old African American female, was the
director of the Albany Civic Center prior to her termination in 2006.
In addition to her race, gender, and age discrimination claims,
Plaintiff alleges that she was discharged because she criticized the
City's policy of advancing money on ticket sales to the owners and/or

4

promoters of the South Georgia Wildcats football team.  Plaintiff also alleges that Defendants violated her First Amendment rights of petition and association by discharging her because she hired an attorney to assist with her personal employment grievances.

Approximately eight months prior to Defendant Lott's hiring, "some white members of the Albany community sent a letter to then interim city manager Lemuel Edwards requesting that Plaintiff be terminated from her position as the Director of the Civic Center." (Compl. ¶ 9.)  In response to this, "Edwards . . . stated that 'I do not agree that a change is necessary at the leadership level at this time.'"  (*Id.*)  "Some members of the Albany city commission told Plaintiff that these white people wanted her employment terminated[,] [and] a high ranked city official told Plaintiff that these individuals wanted her employment terminated because she dotted her I's and she crossed her T's." (*Id.*)  Shortly after Defendant Lott was hired as city manager, he scheduled a meeting with Plaintiff to discuss "the cash advances on season tickets that the City was giving to Celebrity Services, Inc."  (*Id.*)  "Prior to this meeting, [Plaintiff] had been very critical of Albany's policy of advancing monies on the sell [sic] of season tickets for the South Georgia Wildcats Football team to Celebrity Services, Inc."  (*Id.* at ¶ 10.) Although the meeting with Lott was supposed to focus on this issue, Defendant Lott instead "asked [Plaintiff] what she was doing to market the civic center."  (*Id.* at ¶ 9.)  Approximately one month

5

later, "Lott wrote [Plaintiff] a letter informing [her] that she was incapable of operating the Civic Center." (*Id.* at ¶ 10.)

Shortly after her meeting with Lott, Plaintiff "complained of discrimination." (*Id.* at ¶ 10.) In her official evaluation, "Lott evaluated [Plaintiff] ineffective in all areas . . . ." (*Id.* at ¶ 10.) The evaluation also indicated "that [Lott] was going to place [Plaintiff] on a Professional Development Plan, which he was required to do under the policies of Albany, but he was not going to do so because [she] decided to retain an attorney." (*Id.* at ¶ 11.) "Plaintiff filed a grievance against Lott as a result of this evaluation pursuant to Albany's Personnel Management System. Lott did not take any action on Plaintiff's grievance." (*Id.* at ¶ 10.) On February 8, 2006, however, Lott terminated Plaintiff's employment. (*Id.* at ¶ 12.)

Based on these facts, Count III of Plaintiff's Complaint summarily alleges that "Defendants' actions in violating Plaintiff's rights of freedom of speech, freedom of association, right to access to courts, and right to petition the government violated Plaintiff's Constitutional rights under the First Amendment and the Fourteenth Amendment [sic] to the United States Constitution which may be remedied through 42 U.S.C. § 1983." (*Id.* at ¶ 25.)

## DISCUSSION

The First Amendment to the United States Constitution provides that "Congress shall make no law . . . abridging the freedom of

6

speech . . . or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend I. If a public employer "condition[s] [public employment] on the employee's relinquishing a [First Amendment] right absent substantial government justification[,]" that employer may be liable under 42 U.S.C. § 1983. *McCabe v. Sharrett*, 12 F.3d 1558, 1562 (11th Cir. 1994).

In order for a pubic employee to establish such liability, however, the employee must first demonstrate that "the asserted right is protected by the Constitution and that he or she suffered 'adverse employment action' for exercising the right." *Id.* (internal citation omitted). Here, Plaintiff contends that she was fired for asserting (1) her right to free speech, (2) her right to freely associate with her attorney, and (3) her right to petition the government and access the courts. Defendants do not dispute that Plaintiff's termination was an "adverse employment action." Rather, Defendants contend that the alleged speech forming the basis of Plaintiff's claim is not protected speech. Defendants further contend that even if they discharged her because she hired an attorney, such action does not violate the First Amendment because each of her grievances is personal.

I.  **Right to Freedom of Speech**

Plaintiff alleges that she was fired for criticizing Albany's policy of advancing to the owner monies the City collected from arena

7

football season ticket sales.  It is well settled that "a state cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." *Connick v. Myers*, 461 U.S. 138, 142 (1983).  In the context of public employment, however, courts are required to "'balance between the interests of the [employee], as a citizen, in commenting on matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Id.* (*citing Pickering v. Bd. of Ed.*, 391 U.S. 563, 568 (1968)) (alteration in original).

For a government employee to establish a prima facie case of First Amendment retaliation for exercising the right to free speech, that employee must show

> 1) that the speech can be fairly characterized as relating to a matter of public concern, 2) that her interests as a citizen outweigh the interests of the State as an employer, and 3) that the speech played a substantial role in the government's decision to take an adverse employment action.

*Akins v. Fulton County*, 420 F.3d 1293, 1303 (11th Cir. 2005) (summarizing Supreme Court's *Pickering* test).  Put simply, "when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to

8

the employee's behavior." *Connick*, 461 U.S. at 147. Whether a particular form of expression addresses a matter of public concern "must be determined by the content, form, and context of a given statement . . . ." *Id.* at 147-48 (footnote omitted). Matters of public concern generally "relat[e] to any matter of political, social, or other concern to the community[.]" *Id.* at 146.

Plaintiff's Complaint sufficiently alleges that the content of her speech related to a matter of public concern. She alleges that she criticized a specific policy relating to the management of the City's revenue. At this stage of the proceedings, those allegations are sufficient to establish that her speech involved a matter of public concern. However, this does not end the inquiry as to whether her speech was protected under the First Amendment. It is now clear that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, ___ U.S. ___, 126 S. Ct. 1951, 1960 (2006); *accord Battle v. Bd. of Regents,* 468 F.3d 755, 761-62 (11th Cir. 2006)(First Amendment does not protect speech on matters of public concern made by a government employee pursuant to her official employment responsibilities).

Therefore, the Court must examine Plaintiff's Complaint to determine whether she has alleged facts sufficiently demonstrating that her speech was protected. Plaintiff does allege generally that

9

she engaged in "protected activity."[5]  (*See* Compl. ¶¶ 6, 13.)  This is nothing more than a conclusory allegation.  Clearly, such allegations are insufficient to state a claim for First Amendment retaliation.  Plaintiff must allege "a 'plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *Fullman,* 739 F.2d at 556.  "Conclusory allegations, unwarranted factual deductions, or legal conclusions masquerading as facts" are not sufficient to avoid dismissal for failure to state a claim.  *Davila*, 326 F.3d at 1185.

Plaintiff does not allege that her criticisms of the ticket policy were made in her capacity as a private citizen as opposed to being made in her official capacity as director of the civic center.  Although Plaintiff's allegations are vague and difficult to interpret in isolation, it is clear when read in the context of her entire Complaint, that her statements about the season ticket policy were made as part of her official duties.  For example, her statement that she "had been very critical of Albany's policy of advancing monies on the sell of season tickets . . ." relates to the very subject matter for which she believed she was summonsed to a meeting with Defendant Lott in her capacity as director of the civic center.  (*See* Compl.

---

[5]Quite frankly, it is not clear from the Complaint whether Plaintiff is referring to "protected First Amendment speech" as it relates to her criticism of the City ticket policy, which is the basis of her First Amendment retaliation claim, or protected activity as it relates to her complaints of discrimination, which is the basis of her race and gender based retaliation claims.

¶¶ 9, 10.) She further alleges that at all times relevant to her complaint she was an employee of the City and director of the civic center, and that Defendant Lott, as city manager, was the City's "supervisory official." (*Id.* at ¶¶ 3, 6.) Finally, it can reasonably be inferred from the Complaint that Plaintiff contends that her first meeting with Defendant Lott, in which he asked her what she was doing to market the civic center, was part of a pretextual scheme to terminate her employment because she, as the director of the civic center, strongly opposed the City's policy on advance season ticket sales. (*Id.* ¶¶ 9, 10.) To interpret Plaintiff's vague allegations to mean that she had criticized the ticket policy in her capacity as a private citizen, rather than in her official capacity as director of the civic center, goes far beyond giving her the benefit of the doubt. Such an interpretation would require pure speculation and would amount to *sua sponte* judicial amendment of Plaintiff's Complaint. As previously explained, "[e]ven under . . . notice . . . pleading, the complaint must state a cause of action sufficient to affirmatively show that plaintiff is entitled to relief." *Fullman*, 739 F. 2d at 556. "'[I]t is not enough, to indicate merely that the plaintiff has a grievance[.] [S]ufficient detail must be given so that the defendant, and the court, can obtain a fair idea of what the plaintiff is complaining, and can see that there is some legal basis for recovery.'" *Id.* (internal citation omitted).

11

Reading Plaintiff's Complaint as a whole and construing all reasonable inferences in her favor, the Court cannot find a single allegation that would support the conclusion that Plaintiff has alleged that she spoke as a private citizen rather than in her capacity as director of the civic center. Accordingly, the Complaint fails to allege that her speech was protected under the First Amendment, and Defendants' Fifth Motion (Doc. 20) is granted as to Plaintiff's free speech claim.

## II. Right to Petition the Government[6] and Right of Association

In addition to her First Amendment speech retaliation claim, Plaintiff alleges retaliation claims based upon Defendants' interference with her rights to petition the government and to association. These claims relate to Defendants' actions in response to learning that Plaintiff hired an attorney to pursue her personnel grievances. Again, Plaintiff is the master of her Complaint, and it is not appropriate for this Court to amend that Complaint so that it will state a claim. Instead, the Court must review the factual allegations in a light most favorable to Plaintiff and determine whether those allegations state a claim for relief. Here, Plaintiff alleges that Defendant Lott retaliated against her by refusing to

---

[6]Plaintiff also refers to a "right of access to the courts" claim. "The right of access to the courts is subsumed under the first amendment [sic] right to petition the government for redress of grievances." *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (11th Cir. 1989) (internal citations omitted). Accordingly, the Court will treat these two claims as one.

12

place her on a professional development plan, as required by city policy, because she had hired an attorney to pursue her personnel grievances with the City.  (*See* Compl. ¶¶ 10, 11.)

A.    The Petition Clause

The Petition Clause of the First Amendment "protects people's rights to make their wishes and interests known to government representatives in the legislature, judiciary, and executive branches."  *Biddulph v. Mortham*, 89 F.3d 1491, 1496 (11th Cir. 1996) (internal citations omitted).  Because this clause "was inspired by the same ideals of liberty and democracy that gave us the freedoms to speak, publish, and assemble[,] . . . there is no sound basis for granting greater constitutional protection to statements made in a petition to the President than other First Amendment expressions." *McDonald v. Smith*, 472 U.S. 479, 485 (1985).  Accordingly, "where a public employee's petition does not address a matter of public concern," that employee is not entitled to recover under 42 U.S.C. § 1983 for retaliation in violation of the First Amendment.  *Grigley v. City of Atlanta*, 136 F.3d 752, 755 (11th Cir. 1998).

In the present case, Plaintiff claims to have been fired because she hired an attorney.  It is difficult to ascertain from Plaintiff's vague allegations exactly what she hired her attorney to do, but reading the allegations in context with the other elements of the Complaint and generously interpreting those allegations in Plaintiff's favor, the Court interprets her allegation to be that she

13

hired an attorney to pursue the employment grievances that she describes in her Complaint. The Court finds that whether Plaintiff is placed on a professional development plan or receives a poor performance evaluation concerns only her personal professional development. Consequently, she fails to state a claim under the First Amendment because her grievances relate to her personal job performance and not to a matter of public concern. Accordingly, the Court grants Defendants' Fifth Motion (Doc. 20) to the extent it relates to Plaintiff's claims of retaliation in violation of her right to petition the government.

B.   Freedom of Association

Plaintiff's remaining First Amendment claim alleges that Defendants violated her right to free association when they fired her for hiring an attorney. The First Amendment protects two forms of association: (1) "intimate association," or the freedom to choose to enter into certain intimate human relationships, and (2) "expressive association," or the freedom to associate for the purpose of engaging in activities protected by the First Amendment. *See generally Roberts v. United States Jaycees*, 468 U.S. 609 (1984). While the right to intimate association is protected "as a fundamental aspect of personal liberty[,]" the right to expressive association "is protected by the First Amendment as a necessary corollary of the rights that the amendment protects by its terms." *McCabe*, 12 F.3d at 1563.

As with other First Amendment rights, public employees have the right to engage in associative activities without fear of retaliation. *See Cook v. Gwinnett County School Dist.*, 414 F.3d 1313, 1320 (11th Cir. 2005). This right "is burdened by adverse employment action if the protected association was a 'substantial' or 'motivating' factor in the employer's decision." *Shahar v. Bowers*, 70 F.3d 1218, 1299 (11th Cir. 1995) (*citing Mt. Healthy City School Dist. v. Doyle*, 429 U.S. 274, 287 (1977); *Hatcher v. Board of Pub. Educ.*, 809 F.2d 1546, 1558 (11th Cir. 1987)), *rev'd en banc*, 114 F.3d 1097 (11th Cir. 1997).

In the present case, the same exact facts that give rise to Plaintiff's petition claim give rise to her association claim. She contends that Defendants violated her association rights when they fired her for hiring an attorney. This type of association with an attorney would constitute "expressive association" if done "for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion." *Roberts*, 468 U.S. at 618.

In Plaintiff's case, the precise issue presented is whether a government employee has a protected First Amendment right to associate with an attorney to pursue a personal grievance when she has no protected First Amendment right to pursue the very grievance for which she has chosen to associate with the attorney. As previously explained, it is clear that Plaintiff had no protected

15

First Amendment right to pursue her personnel grievances with the City because they do not involve matters of public concern.   The Court acknowledges precedent from the Eleventh Circuit indicating that there is no public concern requirement for freedom of association. *See*, *e.g.*, *Cook,* 414 F.3d at 1320; *Hatcher*, 809 F.2d at 1558.  However, after careful consideration, the Court concludes that if it were to interpret these cases to mean that the "public concern" requirement *never* applies to a free association claim, it must reach the inexplicable conclusion that the First Amendment provides constitutional protection for a government employee to hire an attorney to pursue the employee's personal employment grievance, but no protection exists for an employee who does not possess the wisdom (or perhaps the resources) to hire an attorney.  The rationale underlying the "public concern" requirement cannot sanction such a result.

In a similar situation, the Eleventh Circuit has made clear that there is no rational basis for requiring a public employee's speech to relate to a matter of public concern but not impose such a requirement on a right to petition claim.  As explained by the court:

> The Petition Clause is not entitled to any greater protection than the Free Speech Clause: "The Petition Clause . . . was inspired by the same ideals of liberty and democracy that gave us the freedoms to speak, publish, and assemble. These First Amendment rights are inseparable, and there is no sound basis for granting greater constitutional protection to statements made in a petition . . . than other First Amendment expressions."

16

*Grigley*, 136 F.3d at 755 (first omission in original). Likewise, no sound basis exists for granting greater constitutional protection to a government employee's pursuit of a personal employment grievance accompanied by a lawyer than a grievance pursued *pro se.*

The Court finds the cases which hold that no public concern requirement exists for freedom of association claims to be distinguishable from the case at bar. Those cases did not involve association for the sole purpose of expressing views that were not entitled to First Amendment protection.

In *Cook,* the plaintiff's government employer allegedly retaliated against her because of her association with a "union-like" organization for school bus drivers and her activities in recruiting other employees to the organization. The court held that recruiting fellow employees and discussing safety issues related to employment were matters of public concern protected under the First Amendment free speech clause. *See id.* at 1318-20. The court also held that the plaintiff's right of association was protected for the same reasons her speech was protected. *See id.* at 1320-21. There was no contention in *Cook* that the plaintiff's associations were established to pursue expressions which were not protected by the First Amendment.

Similarly, in *Hatcher,* the defendant school board allegedly demoted the plaintiff, a school principal, because (1) she attended public meetings at which parents protested certain school closings

17

and (2) she brought her minister and a school board member to a meeting with the assistant superintendent to discuss her demotion. *See id.* at 1557. The court held that this second form of associational activity was protected under the First Amendment. *See id.* at 1558. As to the first, the plaintiff's attendance at the public meetings, the court made it clear that she had a protected First Amendment right to attend those public meetings, *see id.*, thus making *Hatcher* distinguishable from the present case. The more difficult aspect of *Hatcher* to distinguish is the court's recognition of the plaintiff's First Amendment right to bring her minister and a school board member to a meeting with the school superintendent to discuss a matter of purely private concern. Unlike the present case, however, the *Hatcher* court was not squarely presented with the issue of whether a governmental employee has a right under the free association clause to associate with someone solely for the purpose of pursuing a purely private grievance that is not protected by the First Amendment. In fact, the *Hatcher* court did not even address whether it based its decision upon "expressive association" or upon the intimate nature of an individual's association with her minister. Quite simply, the *Hatcher* court did not have to confront the issue which forms the basis of this Court's ruling, and therefore, that court did not decide the issue presented today.

The Court emphasizes the narrow reach of today's ruling. It does not stand for the proposition that a public concern requirement

18

exists for all free association claims. That conclusion would be contrary to well established Eleventh Circuit precedent. The Court simply holds that in the unusual circumstance where an association exists solely for the purpose of petitioning the government on behalf of a government employee for an entirely private employment grievance, the nature of the grievance must be considered in determining whether the association is protected under the First Amendment. When the grievance itself is not protected, the act of labeling the claim as one for free association instead of free petition cannot linguistically rescue an otherwise deficient claim. To interpret the applicable precedent otherwise would lead to the perverse proposition that a government employee has a First Amendment right to hire a lawyer to pursue a personal employment grievance when that same employee has no First Amendment right to pursue that same grievance on her own. The framers of the Constitution could not have intended such an irrational result. Accordingly, the Court grants Defendants' Fifth Motion (Doc. 20) as to Plaintiffs' freedom of association claim.

## CONCLUSION

For reasons previously stated, the Court rules as follows:

Defendants' first motion (Doc. 11), Defendants' Second Motion (Doc. 13), Defendants' Fourth Motion (Doc. 17), Defendants' Seventh Motion (Doc. 24) and Defendants' Amended Motion (Doc. 26) are denied

as moot; and Defendants' Third Motion (Doc. 15), Defendants' Fifth Motion (Doc. 20), and Defendants' Sixth Motion (Doc. 22) are granted.

IT IS SO ORDERED, this 14th day of February, 2007.


                             S/Clay D. Land
                                 CLAY D. LAND
                         UNITED STATES DISTRICT JUDGE