IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

MATTIE GODDARD,                          *

            Plaintiff,                   *

vs.                                      *       CASE NO. 1:06-CV-034 (CDL)

THE CITY OF ALBANY, GEORGIA; and         *
ALFRED D. LOTT, individually and
in his official capacity as City         *
Manager of the City of Albany,
Georgia,                                 *

                                         *

            Defendants.                  *
_____

O R D E R

    The above-captioned action arises from Plaintiff's employment

as Director of the Albany Civic Center.  Plaintiff sued her former

employer, the City of Albany ("the City"), and her former supervisor,

City Manager Alfred D. Lott, asserting claims for race, gender, and

age discrimination under Title VII of the Civil Rights Act of 1964

("Title VII"),[1] the Age Discrimination in Employment Act of 1967

("ADEA"),[2] 42 U.S.C. § 1981, and 42 U.S.C. § 1983.[3]  Plaintiff also

asserts claims for retaliation under Title VII, the ADEA, and § 1981.

Presently pending before the Court is Defendants' Motion for Summary

---

[1] 42 U.S.C. § 2000e *et seq.*

[2] 29 U.S.C. § 621 *et seq.*

[3] This Court previously dismissed all of Plaintiff's claims against
Defendant Lott in his official capacity and clarified that she may pursue
her Title VII and ADEA claims only against the City.  (Order 2-3, Oct. 22,
2007.)

Judgment (Doc. 93).  For the reasons set forth below, this motion is granted.[4]

FACTUAL BACKGROUND

Viewing the facts in the light most favorable to Plaintiff, the record establishes the following:

Plaintiff began her employment with the City in 1983, and she spent approximately fifteen years preceding her termination as Director of the Albany Civic Center.  In that capacity, Plaintiff was a department head who reported directly to the Albany City Manager.  Throughout her entire term of employment prior to the fall of 2005, no City Manager had ever rated Plaintiff's performance below "effective."

**I.   The Arena Football Dispute**

In 2004, Plaintiff became involved in a public dispute with the owner of the South Georgia Wildcats arena football team.  The City had contracted to host all of the team's home football games over a five-year term, and the contract obligated the City to sell single game tickets through the Civic Center Box Office.[5]  Since the contract did not require that the team's owner post a performance bond, Plaintiff was concerned that the City would be liable to ticket

---

[4]In reaching this conclusion, the Court did not rely upon evidence that should not be considered at the summary judgment stage, so Plaintiff's Notice of Objection (Doc. 102) is overruled as moot, Defendant's Motion to Strike (Doc. 104) is denied as moot, and Defendant's Motion to Strike (Doc. 113) is denied as moot.

[5]The Civic Center ultimately sold both single game and season tickets.

2

holders in the event of cancellations.  Throughout the negotiation process, Plaintiff was very vocal in opposing the release of ticket proceeds without first securing a performance bond from the team's owner, Mike Storen.  Because of this and other disagreements, Plaintiff maintained a strained relationship with Mr. Storen.[6]

On January 13, 2005, Mr. Storen and six other "Concerned Members" of the Albany "Business Community" wrote a letter to the City's Board of Commissioners and the interim City Manager, Lemuel Edwards.  (Defs.' Dep. Ex. 1, Jan. 13, 2005 [hereinafter Concerned Citizens Memo].)  The letter expressed concern that "the Civic Center is on a continued course of business failure" as a result of an "atmosphere . . . of hostility operating under an air of negativity." (*Id.*)  The letter also stated that "the building leadership creates and maintains an adversarial working relationship, as opposed to a relationship of partnership."  (*Id.*)  The Concerned Citizens specifically requested that the City "undertake immediate action to begin the process of revitalizing the Civic Center and its reputation."  (*Id.*)

Mr. Edwards forwarded this letter to Plaintiff, who responded on January 21, 2005 that she and her staff were "ready and willing to embrace and perform any [necessary] operating changes."  (Pl.'s Dep. Ex. 34 & Defs.' Dep. Ex. 2, Jan. 21, 2007.)  Plaintiff believed,

---

[6]In addition to the performance bond issue, Plaintiff and Mr. Storen butted heads on issues such as the progress of football-related construction and Plaintiff's refusal to release the team's uniforms and equipment to Mr. Storen in November 2004.

however, that these "white citizens" were motivated against her because "wom[e]n don't know how to run a Civic Center[,]" she "was a little too old for the business," and "black people don't normally run [a] civic center." (Pl.'s Dep. 46:13-16, Dec. 8, 2006.) Although Plaintiff claims she articulated these concerns to Mr. Edwards, he does not recall having that discussion with Plaintiff. (Edwards Dep. 212:8-15, Dec. 4, 2006.) Regardless, on February 15, 2005, Mr. Edwards informed the Concerned Citizens that "[he did] not agree that a change [was] necessary at the leadership level at [that] time." (Pl.'s Dep. Ex. 1A & Defs.' Dep. Ex. 8, Feb. 15, 2005.)

## II.  Defendant Lott's Hiring

Defendant Alfred D. Lott took over as the Albany City Manager in September 2005.[7]   As City Manager, Defendant Lott reported directly to the Albany Board of Commissioners.  In mid-September, Defendant Lott "conducted two-hour sessions with each [City] Commissioner[ in which a]ll but one expressed concern . . . about the management and utilization of the Civic Center." (Lott Dep. 95:17-23, Dec. 5, 2006.)  As a result, Defendant Lott paid particular attention to the Civic Center and was able to observe Plaintiff's job performance on eight to ten occasions prior to the end of October.

On October 26, 2005, Defendant Lott issued Plaintiff a "performance counseling" letter expressing his "professional opinion" that she was "performing below satisfactory standards." (Defs.' Dep.

---

[7]Defendant Lott is an African-American male over the age of forty.

4

Ex. 34, 1, Oct. 26, 2005.)   Defendant Lott outlined four specific areas in which Plaintiff needed to "improve [] performance immediately" or risk facing "disciplinary action, including termination." (*Id.* at 3.)   After reading the letter, Plaintiff was "shocked that [Defendant Lott] would do such a negative assessment" and told him that he "must have been listening to . . . the special interest group who . . . wants me removed from the Civic Center[.]" (Pl.'s Dep. 182:18-22.)   Despite Defendant Lott's assurances "that this was based on [his own] observations[,]" (Lott Dep. 69:17), Plaintiff's attorney responded on November 3, 2005 by denying the cited deficiencies and arguing that Plaintiff "believe[d] that she would not have encountered a lot of these issues [with the community] if she were a white person." (Pl.'s Dep. Ex. 46 & Defs.' Dep. Ex. 39, Nov. 3, 2005.)

**III. Plaintiff's Termination**

Defendant Lott remained dissatisfied with Plaintiff's job performance through November 2005.   On November 21, 2005, he issued a formal performance evaluation in which he rated Plaintiff "ineffective" in all areas. (Pl.'s Dep. Ex. 2 & Defs.' Dep. Ex. 43, Nov. 21, 2005.)   Defendant Lott met with Plaintiff and asked her to read his evaluation.   At the conclusion of this meeting, Defendant Lott asked that Plaintiff either retire or resign "because come January the 1st, [he would] terminate [her]." (Pl.'s Dep. 238:3-4.) Plaintiff refused both options, instead stating that she "would like

5

to meet . . . to specifically discuss any issues that [Defendant Lott had] with [her] job performance." (Pl.'s Dep. Ex. 61 & Defs.' Dep. Ex. 49, Nov. 28, 2005.)  Plaintiff also submitted a "grievance" articulating her belief that the "inequitable treatment" was based upon her "race and age." (Pl.'s Dep. Ex. 39 & Defs.' Dep. Ex. 44, Nov. 21, 2005 [hereinafter Grievance].)

On February 1, 2006, Defendant Lott suspended Plaintiff's employment, with pay, pending termination. Defendant Lott "concluded by [Plaintiff's] inability and/or unwillingness to respond to [his] October 26, 2005 performance counseling letter[] . . . that [she was] deliberately disregarding [his] authority as City Manager." (Defs.' Dep. Ex. 55, 1, Feb. 1, 2006 [hereinafter Termination Letter].)  To further explain his decision, Defendant Lott specifically outlined the most "recent and current examples of [Plaintiff's] incompetence and insubordination." (*Id.*)  Although Defendant Lott allowed Plaintiff "to present evidence to show that [he was] mistaken" at a hearing on February 7, (*id.* at 3-4), he declined to change his decision, and Plaintiff's termination took effect on February 10, 2006.

Plaintiff filed the present action on March 7, 2006, asserting claims of retaliation, hostile work environment, and race, gender, and age discrimination against Defendant Lott and the City. Defendants contend that Plaintiff has failed to present any evidence

sufficient to create a triable issue of fact, and thus seek summary judgment on each of her claims.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A central purpose of the summary judgment rule is "to isolate and dispose of factually unsupported claims or defenses[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

Defendants have the burden to show that there is no genuine issue of material fact.  *See id.* at 323.  To meet this burden, Defendants may point the Court to "affirmative evidence demonstrating that [Plaintiff] will be unable to prove [her] case at trial." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993) (internal quotation marks and citations omitted).  In the alternative, Defendants may show "that there is an absence of evidence to support [Plaintiff's] case." *Celotex Corp.*, 477 U.S. at 325.  This is because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

Once Defendants meet their burden, it is Plaintiff's burden to produce evidence showing that there *is* a genuine issue of material fact.  *See Celotex Corp.*, 477 U.S. at 324.  Plaintiff "must go beyond

7

the pleadings," *id.,* and point the Court to "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e); *accord Celotex Corp.*, 477 U.S. at 324. Plaintiff is not required to produce evidence in a form that would be admissible at trial, but she must point to some evidence to show a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 324. Such evidence may be in the form of affidavits, depositions, answers to interrogatories, or admissions on file. *Id.; accord* Fed. R. Civ. P. 56(e).

Defendants are entitled to summary judgment if, after construing the evidence in the light most favorable to Plaintiff and drawing all justifiable inferences in her favor, no genuine issues of material fact remain to be tried. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). It is not enough to have *some* alleged factual dispute; there must be a genuine issue of material fact to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 247-48. A fact is *material* if it is relevant or necessary to the outcome of the suit. *Anderson*, 477 U.S. at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for Plaintiff—there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Anderson*, 477 U.S. at 248.

8

DISCUSSION

Plaintiff claims that Defendants discriminated against her because of her race, gender, and age in violation of Title VII, the ADEA, 42 U.S.C. § 1981, and the Equal Protection Clause. Defendants contend that there is an absence of evidence to support any of Plaintiff's claims and that they are entitled to summary judgment.

**I.   Claims Under Title VII, the ADEA, and § 1981[8]**

It is Plaintiff's burden to show by a preponderance of the evidence that Defendant Lott and the City of Albany intentionally engaged in unlawful discrimination. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993). "A plaintiff . . . may attempt to show this discrimination by offering either direct or circumstantial evidence." *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1266 (11th Cir. 1999) (citation omitted). With respect to most of her claims, Plaintiff presents only circumstantial evidence of discrimination. Those claims are analyzed using the familiar burden-shifting framework introduced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Since Plaintiff attempts to establish her race

---

[8]Claims of intentional discrimination under each of these statutes "have the same requirements of proof and present the same analytical framework." *Springer v. Convergys Customer Mgmt. Group Inc.*, 509 F.3d 1344, 1347 n.1 (11th Cir. 2007) (per curiam) (citing *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998)); *accord Cofield v. Goldkist, Inc.*, 267 F.3d 1264, 1268 n.6 (11th Cir. 2001) (per curiam). Accordingly, the Court "shall explicitly address the Title VII claim[s] with the understanding that the analys[es] appl[y] to the § 1981 [and ADEA] claim[s] as well." *Standard*, 161 F.3d at 1330.
   Based on the Court's previous rulings, *see supra* note 3, for purposes of this section of the Order, to the extent Defendant Lott's personal liability exists, it is limited to § 1981 liability.

discrimination claim using both direct and circumstantial evidence, however, the Court must first determine whether direct evidence exists supporting that claim.

   A.   Direct Evidence of Race Discrimination

   "Direct evidence is '[e]vidence, which if believed, proves existence of fact in issue without inference or presumption.'" *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528 n.6 (11th Cir. 1987) (quoting Black's Law Dictionary 413 (5th ed. 1979)) (alteration in original) (emphasis omitted). Such evidence "is composed of 'only the most blatant remarks, whose intent could be nothing other than to discriminate.'" *Schoenfeld*, 168 F.3d at 1266 (quoting *Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir. 1989)). Statements that "at best merely suggest[] a discriminatory motive," *id.*, or that "could by inference have more than one possible meaning" are circumstantial, and not direct, evidence of discrimination, *Harris v. Shelby County Bd. of Educ.*, 99 F.3d 1078, 1083 n.2 (11th Cir. 1996).

   Plaintiff claims that she presented direct evidence of race discrimination because: (1) "[her] problems did not begin until a group of white citizens circulated a letter against her," (Pl.'s Br. in Supp. of Denying Defs.' Mot. for Summ. J. 10 [hereinafter Pl.'s Br.]); (2) Defendant Lott specifically requested that Plaintiff's replacement, a Caucasian male, apply for the position, (Hogencamp Aff. ¶ 9, June 18, 2007); (3) a local "community activist," William

10

Wright, stated that he heard Defendant Lott make statements that "clear[ly] impli[ed] . . . that there were no competent black people in the Albany area," (Wright Aff. ¶ 3, Aug. 31, 2007); and (4) Wright also heard Defendant Lott "state words to the effect that Albany is a black city, but . . . he was going to put white people in key places," (*id.* at ¶ 2.)

The first three items clearly are not direct evidence of race discrimination because each of these statements "at best merely suggests a discriminatory motive[.]" *See Schoenfeld*, 168 F.3d at 1266. The fourth item of evidence—Defendant Lott's alleged statement about "put[ting] white people in key places"—presents a closer question. The Court ultimately concludes, however, that this statement cannot serve as direct evidence of race discrimination because there is no evidence that Defendant Lott actually said "he was going to put white people in key places." Instead, Mr. Wright claims that he heard Defendant Lott "state words to [that] effect," or words which he interpreted to mean that Defendant Lott intended to make employment decisions based upon racial considerations. (Wright Aff. ¶ 2.) At most, this evidence shows that Mr. Wright understood the "effect" of Defendant Lott's remarks, whatever they were, as expressing an intent to "place white people in key places." However, since Mr. Wright's affidavit does not provide clear evidence of Defendant Lott's discriminatory intent, it does not "prove[] existence of fact in issue without inference or presumption" and is

11

not direct evidence of discrimination.  *Rollins*, 833 F.2d at 1528 n.6.

> B.   Disparate Treatment Based on Circumstantial Evidence

Since Plaintiff has failed to produce direct evidence of discrimination, she must proceed on all of her claims using circumstantial evidence.  Under the *McDonnell Douglas* framework, Plaintiff must first "create an inference of discrimination by establishing a prima facie case." *Williams v. Motorola, Inc.*, 303 F.3d 1284, 1293 (11th Cir. 2002). Once Plaintiff establishes a prima facie case, the burden shifts to Defendants to articulate a legitimate, nondiscriminatory reason for the alleged discriminatory behavior. *McDonnell Douglas*, 411 U.S. at 802; *Rojas v. Florida*, 285 F.3d 1339, 1342 (2002).   If Defendants carry this burden, the presumption of discrimination is rebutted.  *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981). However, Plaintiff can still defeat summary judgment by presenting evidence sufficient to create a jury question as to whether the proffered legitimate, nondiscriminatory reason is merely pretext for a discriminatory decision.  *McDonnell Douglas*, 411 U.S. at 804; *Rojas*, 285 F.3d at 1342.

> 1.   *Prima Facie Case*

Plaintiff first alleges that she was subjected to disparate treatment because of her race, gender, and age.   In order to establish a prima facie case of disparate treatment, a plaintiff must

12

produce evidence (1) that she is a member of a protected class, (2) that she was qualified for the job, (3) that she was subjected to an adverse employment action, and (4) that she was replaced by someone outside her protected class or was treated differently than similarly situated employees. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004). Defendants concede for purposes of summary judgment that Plaintiff has established a prima facie case of race, gender, and age discrimination. First, it is undisputed that Plaintiff belongs to three protected classes: she is an African-American female over the age of 40. Additionally, for purposes of her prima facie case, Plaintiff is qualified to hold the position of Director of the Albany Civic Center.[9] Furthermore, Plaintiff's termination clearly constitutes an adverse employment action. Finally, Plaintiff's replacement, John Mazzola, is a Caucasian male who is younger than Plaintiff.[10] Since Plaintiff has established a prima facie case and "create[d] an inference of discrimination," Defendants must rebut this inference by articulating a legitimate,

---

[9]The parties agree that Plaintiff was employed as Director of the Civic Center "for a significant period of time," and thus that her "qualification for that position sufficient to satisfy the test of a *prima facie* case can be inferred." *Crapp v. City of Miami Beach*, 242 F.3d 1017, 1020 (11th Cir. 2001) (internal quotation marks and citation omitted); *accord Pace v. S. Ry. Sys.*, 701 F.2d 1383, 1386 n.7 (11th Cir. 1983).

[10]Plaintiff was 65 years old at the time of her termination. (Pl.'s Dep. Ex. 48, Tr. Employment Termination Hr'g 85:21-86:4, Feb. 7, 2006 [hereinafter Hr'g Tr.].) Although Mr. Mazzola also belongs to the age group protected under the ADEA, 29 U.S.C. § 631(a), he was 49 years old at the time of his hiring and is younger than Plaintiff. (*See* Pl.'s Dep. Ex. 50, Def. City of Albany's Resp. to Pl.'s First Interrogs. ¶ 16, Sept. 29, 2006.)

nondiscriminatory reason for Plaintiff's termination. *Williams*, 303 F.3d at 1293.

> ### 2. *Legitimate, Nondiscriminatory Reason*

In order to meet its burden to articulate a legitimate, nondiscriminatory reason for a challenged action, an employer "need not persuade the court that it was actually motivated by the proffered reasons." *Burdine*, 450 U.S. at 254. Instead, the employer must "raise[] a genuine issue of fact as to whether it discriminated against the plaintiff." *Id.* If the employer "'explains what [it] has done' or 'produc[es] evidence of legitimate nondiscriminatory reasons[,]'" it meets its burden. *Id.* at 256 (citation omitted) (second alteration in original).

Defendant Lott says that he terminated Plaintiff because she was "[in]capable of comprehending direction" and/or "blatant[ly] insubordinat[e]." (Termination Letter 3.) Defendant Lott specifically relies on the deficiencies first articulated to Plaintiff in his October 26, 2005 performance counseling letter: (1) during a November 1, 2005 financial presentation to the Board of Commissioners, Plaintiff "presented a summary of income and expenses that was littered with mathematical errors" and made the "disingenuous comment" that she was "not 100 percent involved in the writing of the arena football contract"; (2) Plaintiff provided Defendant Lott with a business plan for the 2006 arena football season, at the request of one of the City Commissioners, that was

"exceptionally incomplete" and "made no effort to address the two major financial failings of the Civic Center's performance over the past 10 years";[11] (3) at a progress review meeting on November 29, 2006, Plaintiff "informed [Defendant Lott] that [she] had made no effort to update the Civic Center projects" and "could not provide the status of any Civic Center Strategic Plan projects"; and (4) at a progress review meeting on January 3, 2006, Plaintiff "[was] not prepared and again . . . could not provide the status of any Civic Center projects." (*Id.* at 1-2.)  Defendants clearly articulated a legitimate, nondiscriminatory reason for Plaintiff's termination and thus rebutted the presumption of discrimination.[12]

### 3.   Pretext

To avoid summary judgment, Plaintiff must "meet the reason[s] proffered head on and rebut [them]." *Crawford v. City of Fairburn*, 482 F.3d 1305, 1308 (11th Cir. 2007) (citation omitted).  It is

---

[11]Defendant Lott "specifically [identified] the inability of the Civic Center, while under [Plaintiff's] direction, to support its annual operational expenses or pay the Center's annual mortgage expense." (Termination Letter 2.)

[12]In addition to his personal observations of Plaintiff, Defendant Lott testified that "during [his] interview process, concerns were expressed by several of the Mayor and Board of Commissioners about the management and utilization of the Civic Center[,]" and that "in September [2006], [he] conducted two-hour sessions with each Commissioner[ in which a]ll but one expressed concern . . . about the management and utilization of the Civic Center." (Lott Dep. 95:17-23.)  He further testified that "[a]ll of those people had received complaints from one civic organization or another about the Civic Center." (*Id.* at 94:2-4.)  Defendants produced three letters of complaint in which concerned citizens substantiated Defendant Lott's concerns. (*See generally* Defs.' Dep. Ex. 100, Dec. 20, 2005; Concerned Citizens Memo; Defs.' Dep. Ex. 101, Jan. 19, 2006.)

Plaintiff's burden to show that "a reasonable jury could find that the defendant's justification for the disparity is pretextual." *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 421 F.3d 1169, 1186 (11th Cir. 2005), *aff'd*, 127 S. Ct. 2162 (2007); *accord Crawford*, 482 F.3d at 1308 ("If the employer proffers more than one legitimate, nondiscriminatory reason, the plaintiff must rebut each of the reasons to survive a motion for summary judgment."). A plaintiff shows pretext by "demonstrat[ing] that the proffered reason was not the true reason for the employment decision[,]" and by "introduc[ing] significantly probative evidence . . . that the asserted reason is merely pretext for discrimination." *Brooks v. County Comm'n of Jefferson County*, 446 F.3d 1160, 1163 (11th Cir. 2006) (internal quotation marks and citation omitted). In other words, an employer's reason is not pretext for discrimination "'unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.'" *Springer*, 509 F.3d at 1349 (quoting *Brooks*, 446 F.3d at 1163). Since Plaintiff here claims she was terminated because of her race, gender, and age, she must present evidence of pretext to support each of these claims.

A plaintiff can establish the falsity of her employer's articulated reasons by pointing to "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions . . . that a reasonable factfinder could find them unworthy of credence." *Ledbetter*, 421 F.3d at 1186 (internal quotation marks and

16

citation omitted).  Plaintiff here claims that the proffered reasons for her termination are "unworthy of credence" because "[she] had not received a mark on her evaluations in twenty-three years, [and] a reasonable jury could conclude that the negative evaluation [by Defendant Lott] was nothing more than a paper trail to justify the adverse actions of Plaintiff's employment for discriminatory reasons."  (Pl.'s Br. 22.)  The record clearly demonstrates that numerous City officials disagreed with Defendant Lott's assessment of Plaintiff.  (*See*, *e.g.*, Arthur Kay Williams Aff. ¶ 2, June 26, 2007; Jackson Aff. ¶ 2, Oct. 24, 2007; Hogencamp Aff. ¶ 5.)  In addition, the City's Director of Human Resources expressed the opinion that the "very short" period of time over which Defendant Lott observed Plaintiff's job performance made it "difficult for [her] to really say, with any conviction, that a true assessment had taken place."[13]  (Hines Dep. 66:4-7, Dec. 21, 2006.)  Nonetheless, this Court is "not interested in whether [Defendant Lott's] conclusion [was] a correct one, but whether it [was] an honest one." *Rojas*, 285 F.3d at 1342.

It is not appropriate for a federal court to "sit as a sort of 'super personnel officer' . . . , correcting what . . . [may] be poor personnel decisions." *Shealy v. City of Albany*, 89 F.3d 804, 807 n.6 (11th Cir. 1996) (internal citation omitted).  Plaintiff cannot

---

[13]Ms. Hines further testified that she recommends that new supervisors "not actually do a Performance Appraisal on a person with less than three to six months [of observation]."  (Hines Dep. 44:7-8.)

defeat summary judgment by showing that Defendant Lott was mistaken in his genuine assessment of Plaintiff's abilities or that he made a poor decision. *See id.*; *Rojas*, 285 F.3d at 1342. Instead, in order to survive summary judgment, Plaintiff must produce evidence that the proffered reasons for her termination are *not* genuine, and that Defendants terminated Plaintiff for the improper reasons of race, gender, and/or age. *See Springer*, 509 F.3d at 1349.

Plaintiff claims she can show pretext with evidence that Defendant Lott treated her differently than other similarly situated City employees and harbored a discriminatory animus. Plaintiff specifically relies on the following: (1) Defendant Lott did not evaluate any other employee as "ineffective" in all areas; (2) Defendant Lott "did not subject the other department heads [to] the [same] level of scrutiny" as Plaintiff, (Pl.'s Aff. ¶ 6, Nov. 8, 2007); (3) Defendant Lott also terminated the Director of Finance, Shirley Smith, who is an African-American female; (4) Defendant Lott did not place Plaintiff on a performance improvement plan prior to her termination; (5) Defendant Lott failed to respond to Plaintiff's November 21, 2005 grievance letter; (6) the Director of Human Resources, Mary Hines, believes that Defendant Lott "seem[s] to have some negative issues with females in charge," (Hines Dep. 70:17-18); and (7) a local member of the Albany community overheard Defendant Lott "clear[ly] impl[y] . . . that there were no competent black people in the Albany area" and "state words to the effect that Albany

18

is a black city, but . . . he was going to put white people in key places," (Wright Aff. ¶¶ 2-3.)  As discussed below, this evidence, however, is insufficient to show that "a discriminatory reason more likely motivated [Defendants] or . . . that the . . . proffered explanation is unworthy of credence."  *Brooks*, 446 F.3d at 1163 (internal quotation marks and citation omitted).

### i.   SIMILARLY SITUATED COMPARATOR EMPLOYEES[14]

Plaintiff's first three items of evidence all relate to whether Defendants treated Plaintiff differently than a similarly situated employee outside her protected classes.  Plaintiff is mistaken in her "belie[f] that all employees of Albany are similarly situated because all employees are subject to the same set of work rules." (Pl.'s Br. 13 (citing *Lathem v. Dep't of Children & Youth Servs.*, 172 F.3d 786, 792-93 (11th Cir. 1999); *Anderson v. WBMG-42*, 253 F.3d 561 (11th Cir. 2001).)  In order for an employee to be similarly situated to Plaintiff, that employee must be "'similarly situated in all relevant respects.'"  *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003) (per curiam) (quoting *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (per curiam)).  A comparator employee should be "involved in or accused of the same or similar conduct" and be "disciplined in different ways."  *Id.* (internal

---

[14]It is more common for a plaintiff to use comparator evidence to support a prima facie case.  It is well established, however, that evidence supporting a prima facie case also may be used to establish pretext.  *See*, *e.g.*, *Wilson*, 376 F.3d at 1088 ("[E]vidence of pretext may include . . . the same evidence offered initially to establish the prima facie case.").

quotation marks and citation omitted).  Additionally, the comparator employee must share "very similar job-related characteristics" and be "in a similar situation" to Plaintiff.  *MacPherson v. Univ. of Montevallo*, 922 F.2d 766, 775 n.16 (11th Cir. 1991).

In *Lathem*, the Eleventh Circuit explained that "[t]he most important factors in the [comparator] analysis are the nature of the offenses committed and the punishments imposed."  172 F.3d at 793. In this case, Defendant Lott terminated Plaintiff's employment because he was dissatisfied with her job performance.  The record reflects that Defendant Lott only accused one other employee of "egregious, fundamental management problems," and like Plaintiff, Defendant Lott terminated that employee.  (Pl.'s Dep. Ex. 72, Smith Termination Letter, Sept. 20, 2006.)  Thus, rather than demonstrating disparate treatment, this evidence shows that Defendant Lott imposed equal discipline for equal conduct.  There is no evidence that Defendant Lott treated Plaintiff any differently than a similarly situated employee outside her protected classes such that a reasonable jury could conclude that he terminated Plaintiff because

20

of her race, gender, or age.[15]  Plaintiff's proferred "comparator" evidence certainly is not probative of pretext.

### ii.   DEVIATION FROM ESTABLISHED EMPLOYMENT POLICY

Plaintiff next claims that she established pretext with evidence that Defendant Lott deviated from certain City policies.  It is well established that "[t]he bending of established rules may . . . be suggestive of discrimination." *Walker v. Prudential Prop. & Cas. Ins. Co.*, 286 F.3d 1270, 1279 (11th Cir. 2002) (citing *Morrison v. Booth*, 763 F.2d 1366, 1374 (11th Cir. 1985)).  In order to establish pretext, however, "a plaintiff must show that the deviation from policy occurred in a discriminatory manner." *Rojas*, 285 F.3d at 1344 n.4; *see also Boykin v. Bank of Am. Corp.*, 162 F. App'x 837, 839 (11th Cir. 2005) ("[T]he mere fact that [an employer] failed to follow its own internal procedures does not necessarily suggest that [it] was motivated by illegal discriminatory intent[.]" (internal quotation marks and citation omitted)).

Plaintiff claims that Defendant Lott deviated from City policy by (1) failing to place her on a formal performance improvement plan prior to her termination and (2) failing to respond to her November

---

[15]Plaintiff also claims she was treated differently than Roger Burnett, who served as the interim Civic Center Director after Plaintiff's termination, and John Mazzola, Plaintiff's permanent replacement.  Mr. Burnett and Mr. Mazzola are both Caucasian males who are younger than Plaintiff.  Plaintiff asserts that Defendant Lott did not scrutinize Messrs. Burnett and Mazzola as heavily as he scrutinized Plaintiff.  However, there is no evidence that either of these individuals engaged in conduct similar to Plaintiff, and thus no evidence that Defendant Lott treated them more favorably, under similar circumstances, because of their race, gender, or age.

21, 2005 grievance letter.  Even assuming, in Plaintiff's favor, that

Defendant Lott deviated from established City policies,[16] there is no

_____

[16]There is nothing in the City's "Personnel Policies and Procedures" manual mandating that supervisors implement a formal performance improvement plan for an underachieving employee.  (*See* Defs.' Dep. Ex. E-4, Personnel Policies and Procedures §§ 3-4.)  The record also contains testimony that the City's Personnel Management System operates "different[ly] for Department Heads," and that the actual "Performance Plan" form "is not a mandatory document."  (Hines Dep. 26:3-5, 30:10; Hr'g Tr. 34:1-3 ("A supervisor may do a narrative to address the same issue that a Performance Plan would be used for.").)

    On October 17, 2005, Defendant Lott circulated a memorandum instructing all City supervisors to "[take a]ction in the form of a Performance Plan . . . at any time . . . if the supervisor determines an employee's performance to be below the acceptable level."  (Defs.' Dep. Ex. 30, 9, Oct. 17, 2005.)  The "Performance Plan" form and instructions are meant to provide guidance to supervisors who implement the performance improvement process.  (*See id.* at App. II.)  Since it is undisputed that Defendant Lott did not utilize this formal procedure with respect to Plaintiff, the Court will assume that he violated an established City policy.  It is worth noting, however, that Defendant Lott characterized his October 26 letter as "performance counseling," which was meant to put Plaintiff on notice that her employment would remain in jeopardy unless she improved specific aspects of her job performance.  (Lott Dep. 69:24-25.)
    With respect to Plaintiff's grievance, Defendant Lott contends that he was not required to respond to Plaintiff's letter because the Personnel Manual only provides an opportunity for "the employee to submit a rebuttal[,]" not an actual grievance.  (*Id.* at 71:22-23.)  According to Defendant Lott's October 17, 2005 memorandum,

    [p]erformance evaluations may not be appealed.  Employees are
    encouraged to provide a written statement attesting to any
    rating they believe is not an accurate assessment of their
    performance.  This statement shall be limited to the rating(s)
    disputed and provide substantiation of why an employee believes
    he/she should/should not receive such rating.  This statement
    shall be attached to the appraisal and shall become a part of
    the official file.

(Defs.' Dep. Ex. 30, 2.)  Plaintiff contends that this memo conflicts with the "Personnel Policies and Procedures" manual, which states: "All employees have the right to present their problems and complaints in accordance with this policy free from interference or restraint, and without fear of coercion, discrimination or reprisal."  (Defs.' Dep. Ex. E-4 § 3.A.1.a.)  Although it is not entirely clear that Defendant Lott's memo directly conflicts with the employee manual, or that either statement creates a formal grievance procedure, the Court will assume, in Plaintiff's favor, that Defendant Lott's failure to address Plaintiff's grievance also

evidence that such deviation "occurred in a discriminatory manner." *Rojas*, 285 F.3d at 1344 n.4.   Again, there is no evidence that Defendant Lott treated Plaintiff any differently than any other similarly situated City employee either with respect to her grievance letter or with respect to placing her on a formal performance improvement plan.   In fact, Defendant Lott also terminated Ms. Smith without first implementing a formal performance improvement plan. (Hines Dep. 15:12-21.)   This evidence, therefore, does not create a genuine issue as to whether the articulated reasons for Plaintiff's termination are pretext for discrimination.

### iii. EVIDENCE OF DISCRIMINATORY ANIMUS

Plaintiff's remaining evidence of pretext consists of various items of evidence allegedly demonstrating Defendant Lott's discriminatory animus.   First, Plaintiff points to the fact that Defendant Lott either fired or asked for the resignation of three African-American female department heads.   (Hines Dep. 71:8-12, 73:20-25.)   Second, Plaintiff points to the testimony that Defendant Lott "ma[d]e statements to the effect that although the demographics of the City of Albany are majority black, he had an obligation to hire competent people" and "to the effect that Albany is a black city, but . . . he was going to put white people in key places." (Wright Aff. ¶¶ 2-3.)   Viewing this evidence in the light most favorable to Plaintiff and construing all justifiable inferences in

---

violated City policy.

23

her favor, the Court concludes that Plaintiff's evidence is insufficient to create a triable issue "that a discriminatory reason more likely motivated [Defendants to terminate Plaintiff] or . . . that the . . . proffered explanation is unworthy of credence." *Brooks*, 446 F.3d at 1163.

First, it is clear that none of the evidence presented substantiates Plaintiff's claim of age discrimination. With respect to her claim of gender discrimination, the record reflects that Defendant Lott terminated two African-American female department heads and asked a third, the Director of Human Resources, "if [she] would consider leaving earl[y]." (Hines Dep. 73:16-17.) Defendant Lott justified each of the two terminations by citing to unsatisfactory job performance. With respect to Ms. Hines, however, Defendant Lott "actually said that he did not have a problem with [her] performance at all[,]" and her performance appraisal was "outstanding." (*Id.* at 74:11-12, 134:22-24.) Additionally, Defendant Lott did not ask Ms. Hines to consider leaving early until approximately four months after she first gave him notice of her intent to retire. (*Id.* at 73:7-11.) Moreover, Ms. Hines testified that she believed the request was an attempt to deflect negative media attention about a controversial human resources policy, not a decision based on her race, gender, or age. (*Id.* at 73:14-17, 74:5-8, 74:16-17.) The Court finds that this evidence is insufficient to permit a reasonable fact finder to conclude that the articulated

24

legitimate reasons for Plaintiff's termination are pretext for race, gender, or age discrimination.

Finally, with respect to Plaintiff's claim of race discrimination, the only remaining evidence of discriminatory animus consists of the vague testimony that Defendant Lott made statements "to the effect that" he intended to make hiring decisions based upon racial considerations. Mr. Wright failed to provide any information whatsoever regarding the context of Defendant Lott's alleged statement "to the effect that . . . he was going to put white people in key places." (Wright Aff. ¶ 2.) In addition, the statement about Defendant Lott's "obligation to hire competent people" was made nearly a year and a half *after* Plaintiff's termination. (*Id.*) Moreover, the record shows that although he has not hired an African-American female, Defendant Lott has made the decisions to hire Caucasian males, Caucasian females, and African-American males. (Hines Dep. 75:9-16, 76:1-13.)

In summary, there is nothing in the record exposing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Defendants' proffered legitimate reasons "that a reasonable factfinder could find them unworthy of credence." *Ledbetter*, 421 F.3d at 1186 (internal quotation marks and citation omitted). Since Plaintiff has failed to establish that the articulated reasons for her termination are pretext for race, gender,

or age discrimination, Defendants are entitled to summary judgment on each of Plaintiff's disparate treatment claims.

C.   Hostile Work Environment

Plaintiff also claims that she was subjected to a hostile work environment because of her race, gender, and age.  "A hostile work environment . . . is established upon proof that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  In order to survive summary judgment on her hostile work environment claims, Plaintiff must establish: (1) that she belongs to a protected group or groups; (2) that she was subjected to unwelcome harassment; (3) that the harassment complained of was based on her protected status; (4) that "the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) [that the harassment is] a basis for holding the [City] liable." *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999) (citation and footnote omitted).

Assuming, without deciding, that Plaintiff produced evidence to establish the first two elements of her prima facie case, Plaintiff cannot survive summary judgment on any of her hostile work

26

environment claims because the harassment complained of was not
sufficiently severe or pervasive.  Harassing conduct is actionable
under federal employment law if it "result[s] in . . . an environment
'that a reasonable person would find hostile or abusive' and . . .
that the victim 'subjectively perceive[s] . . . to be abusive.'"
*Miller*, 277 F.3d at 1276 (quoting *Harris*, 510 U.S. at 21-22)
(alteration and second omission in original).  A court must review
the totality of the circumstances to determine whether an employee's
work environment is one that "'a reasonable person would find hostile
or abusive.'"  *Mendoza*, 195 F.3d at 1246 (citation omitted).  In
making this determination, courts generally consider: "(1) the
frequency of the conduct; (2) the severity of the conduct; (3)
whether the conduct is physically threatening or humiliating, or a
mere offensive utterance; and (4) whether the conduct unreasonably
interferes with the employee's job performance."  *Id.*

Plaintiff here argues that Defendant Lott "targeted Plaintiff
for termination," "was openly rude," "treated her with disdain," and
placed Plaintiff's termination "into the public arena."  (Pl.'s Br.
18.)  Plaintiff also contends that she "[has] suffered stress,
embarrassment, and humiliation as a result of" Defendant Lott's
behavior.  (Pl.'s Aff. ¶ 13.)  Even assuming that the record supports
these allegations, Defendant Lott's behavior is far removed from the
type of behavior that generally constitutes actionable harassment.
*Compare Braddy v. Fla. Dept. of Labor & Employment Sec.*, 133 F.3d

797, 801 (11th Cir. 1998) (finding that "angry stares, . . . more frequent trips, and . . . increased criticism" directed toward a plaintiff "do not violate federal employment laws") *with Hulsey v. Pride Rests., LLC*, 367 F.3d 1238, 1248 (11th Cir. 2004) (describing "objectively severe and pervasive" harassment where conduct occurred "at least 18 times during . . . approximately 2 to 2-1/2 weeks," involved "many direct as well as indirect propositions for sex," "repeated attempts to touch [the plaintiff's] breasts, place . . . hands down her pants, and pull off her pants," and "included enlisting the assistance of others to hold [the plaintiff] while [her supervisor] attempted to grope her") *and Miller*, 277 F.3d at 1276-77 (describing actionable harassment where coworkers shouted ethnic slurs at the plaintiff three or four times a day for a month, at times "during the course of berating him for his job performance, or when they were 'arguing with him,' were 'mad with him,' or were 'taunting him'").

Furthermore, and perhaps more importantly, Plaintiff failed to produce any evidence that the alleged harassment was based on, or related to, her race, gender, or age.  Neither Title VII nor the ADEA "enact a general civility code," and each statute only "prohibits discrimination, including harassment, that discriminates based on a protected category."  *Baldwin v. Blue Cross/Blue Shield of Ala.*, 480 F.3d 1287, 1301-02 (11th Cir. 2007) (internal quotation marks and citations omitted).  Plaintiff has failed to establish a prima facie

case of a hostile work environment, and therefore she cannot survive summary judgment on any of these claims.

### D.   Retaliation

Plaintiff next asserts claims of discriminatory retaliation. As in the disparate treatment and hostile work environment contexts, Plaintiff must begin by establishing a prima facie case of retaliation. *Holifield*, 115 F.3d at 1566 (citations omitted).  If Plaintiff establishes her prima facie case, Defendants have the burden of articulating a legitimate, nondiscriminatory reason for the challenged action. *Id.*  Plaintiff can then defeat summary judgment by creating a question of fact as to whether Defendants' reason is mere pretext for discrimination. *Id.*

In order to establish a prima facie case of retaliation, Plaintiff must show (1) that she engaged in statutorily protected activity, (2) that she suffered an adverse employment action, and (3) that the adverse employment action is causally related to the protected activity. *Cooper v. S. Co.*, 390 F.3d 695, 740 (11th Cir. 2004) (quoting *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994)).  Defendants here only dispute the third element of Plaintiff's prima facie case, that her termination is causally related to a statutorily protected activity.[17]

---

[17]Plaintiff contends that she engaged in at least ten different protected activities for which Defendants terminated her employment. Defendants affirmatively challenge the protected status of at least seven of these alleged expressions.  Defendants did not dispute, however, that each of the following are protected activities under Title VII: (1) Plaintiff's November 21, 2005 letter to Defendant Lott expressing her

In order to establish a causal connection between an adverse employment action and protected activity, a plaintiff "'must show that the decision-maker[] [was] aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated.'" *Shannon v. BellSouth Telecomms., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002) (quoting *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000)). "'Close temporal proximity between the protected activity and the adverse action may be sufficient to show that the two were not wholly unrelated.'" *Id.* at 716-17 (quoting *Bass v. Bd. of Comm'rs*, 256 F.3d 1095, 1119 (11th Cir. 2001)). However, "mere temporal proximity, without more, must be 'very close.'" *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (per curiam) (citing *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)).

In *Thomas*, the Eleventh Circuit determined that "[a] three to four month disparity between the statutorily protected expression and the adverse employment action is not enough." *Id.* Here, each of Plaintiff's protected activities occurred within two months of her

---

belief that he "discriminated against [her] because of [her] race and age, and . . . retaliated against [her] for engaging in protected conduct"; (2) the November 23, 2005 *ante litem* notice from Plaintiff's attorney; and (3) Plaintiff's November 25, 2005 EEOC charge alleging race, gender and age discrimination. (Grievance; Defs.' Dep. Ex. 47; Ex. A to Am. Compl.) Since Defendants concede that Plaintiff engaged in at least three protected activities prior to her termination, the Court will limit its analysis of Plaintiff's prima facie case to the issue of causation.

Defendants are entitled to summary judgment, however, to the extent that Plaintiff's retaliation claims depend upon any protected activity which occurred after her suspension on February 1, 2006.

February 2006 suspension and termination.  It is relevant, however, that Defendant Lott first articulated his concerns about Plaintiff's job performance in a letter dated October 26, 2005, which predates all of Plaintiff's protected expressions by at least one month. Furthermore, it is undisputed that on November 21, 2005, Defendant Lott asked Plaintiff to either: "1) resign from the position of [Civic Center] Director at the end of 2005; or 2) retire from the position as Director at the end of 2005." (Pl.'s Dep. Ex. 61 & Defs.' Dep. Ex. 49.) Although Defendants did not terminate Plaintiff until two months later, the request that Plaintiff resign or retire also predates each of the protected expressions for which Plaintiff claims she was fired.  Under these circumstances, the Court finds that the temporal proximity between her protected expressions and her termination is insufficient to establish the causation element of her prima facie case.  Therefore, Defendants are entitled to summary judgment on Plaintiff's retaliatory termination claims.[18]

## II.   Section 1983 Claim: The Equal Protection Clause

Plaintiff's sole remaining claim is a § 1983 claim against Defendant Lott individually for his alleged violations of the Equal Protection Clause of the Fourteenth Amendment.[19]   Defendant Lott

---

[18]Even if Plaintiff could establish a prima facie case of retaliation, Defendants would still be entitled to summary judgment because Plaintiff cannot carry her burden of establishing that Defendants' reasons for the termination were pretext for retaliation. *See supra* Part **I.**B.*3.*

[19]The City is entitled to summary judgment on Plaintiff's § 1983 claim for the same reasons it is entitled to summary judgment on her Title VII claims.  *See Underwood v. Perry County Comm'n*, 431 F.3d 788, 793 (11th Cir.

31

contends that he is entitled to summary judgment on this claim based on qualified immunity.

The qualified immunity defense provides government officials performing discretionary functions with complete protection from damages liability "'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hartley v. Parnell*, 193 F.3d 1263, 1268 (11th Cir. 1999) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "To receive qualified immunity, a government official first must prove that he was acting within his discretionary authority." *Cottone v. Jenne*, 326 F.3d 1352, 1358-59 (11th Cir. 2003) (citations omitted). Although a defendant traditionally bears the burden of establishing his defenses, "[o]nce a defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that the defendant is *not* entitled to qualified immunity." *Id.* at 1358 (emphasis added).

Plaintiff does not dispute that Defendant Lott was acting within his discretionary authority as City Manager of the City of Albany when he terminated her employment. Thus, it is Plaintiff's burden to present sufficient evidence that Defendant Lott is not entitled to qualified immunity. The first step in deciding this issue

---

2005) ("Although the Supreme Court 'do[es] not regard as identical the constraints of Title VII and the Federal Constitution,' '[w]hen section 1983 is used as a parallel remedy for violation . . . of Title VII, the elements of the two causes of action are the same." (alterations and omission in original) (internal citations omitted)).

requires the Court to decide "'whether the plaintiff has [established] the deprivation of a constitutional right.'" *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (citing *Conn v. Gabbert*, 526 U.S. 286, 290 (1999)). If the Court finds that Plaintiff suffered a constitutional injury, it may then "'proceed to determine whether [the] right [violated] was clearly established at the time of the violation.'" *Id.; accord Cannon v. Macon County*, 1 F.3d 1558, 1564 (11th Cir. 1993); *Hartley*, 193 F.3d at 1268.

Plaintiff claims that Defendant Lott violated her constitutional rights under the Equal Protection Clause to be free from race and gender discrimination, including retaliation. As noted above, however, Plaintiff failed to create a triable issue of fact as to whether Defendant Lott terminated her employment because of her race or gender, or in retaliation for her complaints about race and gender discrimination. *See supra* Part **I.**<u>B.</u>, Part **I.**<u>D.</u> Since Plaintiff failed to present sufficient evidence of a constitutional injury, Defendant Lott is entitled to qualified immunity on Plaintiff's § 1983 claims.

CONCLUSION

For the reasons stated herein, Defendants' Motion for Summary Judgment (Doc. 93) is granted.

IT IS SO ORDERED, this <u>20th</u> day of <u>March</u>, 2008.

S/Clay D. Land<br>CLAY D. LAND<br>UNITED STATES DISTRICT JUDGE

33